We'll hear argument next in Case 19-631, William Barr, Attorney General v. the American Association of Political Consultants. Before we get started, I would like to remind everyone to turn their cell phones off. Mr. Stewart. Thank you, Mr. Chief Justice, and may it please the Court. In 1991, Congress enacted the TCPA's basic restriction on the placement of automated calls to cell phones. In the years that followed, lower courts consistently upheld the constitutionality of that provision as a content-neutral restriction on the use of calling technologies that consumers found particularly intrusive and annoying. Congress's enactment of the government debt exception in 2015 did not introduce any constitutional infirmity into the statutory scheme. That exception is limited to a narrow category of calls that intrude less severely on consumer automated call and that serve an important countervailing interest in protecting the Federal Fisk. There's been a good deal of back-and-forth in the briefs about whether respondent's challenge is properly viewed as one to the exception or to the general automated call restriction. And I think in circumstances like this, there's not a right way and a wrong way, not a right or wrong challenge to bring. There's simply two conceptually distinct analytical ways of challenging a law that includes a basic restriction subject to exceptions. Here we think that both challenges could have been brought, but that both would fail. But I'd like to focus first on the challenge that respondent is asserting in its brief. This is the challenge that respondents are asking the court to focus on. And that is the challenge to the underlying automated call restriction. And respondent's basic theory is that the government debt exception, taken in combination with other aspects of the statutory scheme, prevents the automated call restriction from performing its intended consumer protection function, renders it insufficiently efficacious to be upheld under the First Amendment. And we think that's wrong. If you look at the statute, the only other statutory exceptions to the automated call restriction are those for emergency calls and calls made with the prior expressed consent of the recipient. And respondents have not contended that either of those is, raises a First Amendment problem or cast doubt on the efficacy of the underlying restriction. Mr. Stewart, one of your basic points to avoid strict scrutiny under the First Amendment is that you're not really looking at the content of the communication in this case, but rather it's more properly viewed as part of an economic relationship. I don't see how that gets you out of the content category. You still have to look carefully at what's being said before you can decide whether the phone call is covered by the provision or not. I think that's the clear holding of our decision in the Reed case. Well, I think that, let me address Reed first and foremost. At the outset of the court's analysis in Reed, after the statement of the case, the court described content-based laws as, quote, those that target speech based on its communicative content. And if we're focusing now on the automated call restriction, the provision of the statute that respondents say is the focus of their constitutional challenge, it's impossible to say that that restriction targets respondents' calls based on their communicative content. The situation was very different in Reed. In Reed, the town had 23 different categories of signs in its sign code, a multitude of different treatments of the different categories. One of them was temporary directional signs, and that was the category of signs that the plaintiffs in the case wanted to put up. And you could tell exclusively from the content of the sign which category it fell into and what restrictions applied. And in that circumstance, it was natural for the plaintiffs to argue and the court to hold that they had been targeted based on the communicative content of their signs. Here, respondents haven't been targeted in any meaningful sense. Their political communications are subject to the same restrictions that apply to the vast, vast majority of automated calls. The fact that a very narrow... I'd like to jump ahead a little bit and get to the severance question. You say that if this exception for government debt is found to be problematic, you should just sever that and keep the rest of the statute. But when we sever provisions, it's because they are illegal. Here there's nothing illegal about the government debt exception. It just, when combined with the rest of the statute, makes the whole statute vulnerable. I wonder why, in that situation, the whole statute shouldn't fall. I guess the two things I would say are, first, it's important to look at the temporal sequence that produced the current state of affairs. That is, the basic restriction was enacted in 1991, and the government debt exception was enacted in a separate public law in 2015. Okay, I've got that. What's your second point? The second point is that the ultimate question of severability is one of congressional intent. What result would Congress have preferred? And for purposes of determining what Congress would likely have preferred, it seems really like the tail wagging the dog to say that we will treat Congress's desire to free collectors of government-backed debts from these restrictions as taking preeminence over Congress's desire to protect all consumers from all other automated cults. We think Congress would clearly prefer that. Thank you, counsel. Justice Thomas? Thank you, Chief Justice. Mr. Stewart, it would seem a bit odd, you suggest, that we sever the exception. But here, it doesn't seem, this remedy doesn't seem to give anything to respondents. It doesn't add any more speech for that, for the respondent, and it seems to be taking speech actually away from someone who's not in this case. I mean, that may be true, but the court's task in determining the appropriate remedy is to kind of follow established principles of severability, to look to indicia of Congress's likely intent. And if the result is that the plaintiff, at the end of the day, doesn't get the practical result that it was looking for, that's not a reason to kind of rejigger the constitution, the severability analysis. I mean, it often is the case that a plaintiff can achieve a practical victory only by prevailing on both of two legal questions. And sometimes it is a question both of the merits of the claim and of the appropriate remedy. And if a court holds that, yes, you are right, you've established the existence of a violation, but the statute read properly simply doesn't authorize the remedy you seek, that's one of the chances that the plaintiff takes when it pursues a claim that depends on prevailing on two separate legal propositions. The plaintiff persuaded the court as to one legal proposition, didn't persuade the court as to a second proposition that was really essential to getting the practical result it wanted. That's not an unusual situation in the law. I'd like to shift gears and focus, just ask the question about your strict scrutiny analysis. You seem to focus on the interest that the individual has in privacy of the cell phone. But it would seem to me that that privacy interest is actually not nearly as great as you as a person would have in the landline phone at home or even someone knocking on their front door. Well, I think at the time that the statute was enacted, cell phones were obviously a lot less prevalent. They may have been used on rare occasions and most people didn't own them. I think now cell phones are, as we explained in the reply brief, are ubiquitous. They are an integral part of daily life for most individuals. And so really the privacy interest is greater than in the residential landline. Yes, if the phone rings at your home and you happen to be there, it may be an intrusion, but most people or virtually all people when they are at home will have their cell phones with them. So unwanted calls to cell phones will pose the same threat to residential privacy that unwanted calls to landlines would. But in addition, people for the most part carry their cell phones with them at all times. And so the effect of automated calls to cell phones is not just potentially to disturb residential privacy, it's potentially to disturb them when they're at work, when they're on social occasions, when for whatever reason they might want to be open to calls from friends or calls from family members, but won't want to be distracted by them. Thank you, counsel. Justice Ginsburg? Counsel, I don't see how you can escape a content-based distinction, and since the content is a debt owed to the government, that's the content of the message, you owe the government a student loan or whatever, then the call is okay. But if the message is, please contribute to our political organization, it's banned. So it's based on what the message is. Pay the government what you owe the government, or contribute to our political organization. I think as we've said in our briefs, it is true that often a court in determining whether the government debt exception applied would look in part to the content of the call, but you wouldn't be looking exclusively to the content of the call. For instance, determination whether the particular debt that was sought to be collected was in fact owed to or guaranteed by the federal government would have nothing to do with the call's content. It would depend on the financial relationship between the debtor and the federal government. And it is characteristic in the legal culture that Congress would enact statutes that regulate communications made in particular fields of economic activity. And so you have laws that regulate what can be said or what disclosures have to be made in connection with the sale of securities. And they're subject to First Amendment challenge, plaintiffs can argue that particular restrictions go too far, but nobody thinks of laws like that as being especially suspect because they are limited to the field of securities. Even though to determine whether a particular communication was covered, a court would need to look in part at the content of the communication. Switching to the severance, we're told that if we strike only the government debt exemption, that would leave the political groups with no incentive at all to assert their First Amendment claim because they're going to lose at the end of the day. So why should they bother challenging, why should they bother with a First Amendment claim when it will be unsuccessful at the severance stage? Well, a couple of responses to that. The first is, as I was indicating earlier, the plaintiffs did argue and they were entitled to argue that the appropriate remedy if there was a constitutional violation was to strike down the whole restriction, but they didn't persuade the Court of Appeals on that question. And if the application of ordinary severance principles would confirm that result, then the court's duty is to follow those principles, even though it leaves this plaintiff without a remedy. The other thing... Also, Justice Breyer? Well, what your last statement and Justice Ginsburg leads me to ask a somewhat philosophical question which you need not answer if you don't want to. But my question is, what is content discrimination? All human life is carried on through speech. All government regulation is carried on through speech. Every single statute book is filled with all kinds of content discrimination. The SEC and every agency deals with nothing but what do their rules apply to, where are the exceptions, etc. And so I'd always thought that that was in Justice Brandeis' third category, economic regulation, as far as the First Amendment is concerned, or at least most of it was. So how, in your view, do you distinguish between what is in that third category? Look to see if it's reasonable. What is in the first category? Never uphold it almost, no matter what. How? What's your way of doing it? I don't think we have any succinct tests that would capture all cases, but I would point to the court or remind the court of certain guideposts that it set up. One is, if you can tell exclusively from the content of a message whether a particular law applies, then that's very likely or almost certain to be content-based. The second is, as I was referring to earlier, the court in Reed referred to content-based laws as those that target speech based on its communicative content. And here, even if you thought that the government debt exception was content-based, it wouldn't follow that the automated call restriction is content-based. The automated call restriction doesn't target speech because of its content. It treats the vast majority of speech the same, and it simply exempts from regulation a very small category of speech. And then the third thing I would say is, whatever the right answer is, it can't be that whenever speech—the mere fact that a particular law is limited to speech that is used in a particular economic activity, that limitation cannot by itself be sufficient to render the law content-based or at least to subject it to strict scrutiny, because that principle would cast doubt on a vast array of laws that Congress and state legislatures have enacted that regulate discrete spheres of economic activity. Thank you. Thank you very much. Mr. Solito? Mr. Stewart, the so-called severability issue in this case is really fascinating. I understand you don't think we need to get to that, but assuming for the sake of argument that we do get to that question, what is your best precedent for the application of a severability analysis in a case like this, where arguably a regulation of speech is unconstitutional only because it contains a content-based or a viewpoint-based exception? I don't think either side has a precedent that was specifically in the First Amendment area, where the court discussed whether severability principles should apply, and if so, how do they apply. I think our best precedents are cases like Morales-Santana and Frost. Yes, those were equal protection cases, but they said in deciding whether an exception should be severed or the underlying rule should be struck down, we look at things like the temporal sequence in which the laws were enacted, whether the exception was enacted later in the day, the degree of Congress's commitment to the basic rule. And I think those are good analogies here, where the grovelment of the First Amendment claim is that this person's speech is being treated differently from another person's speech. What is your response to this counter-argument? In an equal protection case, what the complaining party is objecting to is unequal treatment. So whether the remedy levels up or levels down, the complaining party gets what it wants, mainly equal treatment. Whereas in a free speech case, what the complaining party is objecting to is a restriction on its speech. And if we apply the severability analysis in that situation, the complaining party does not get what it wants, which is the ability to speak without restriction. I think with respect, that conflates what the complaining party wants with what it is entitled to. And for instance, in Morales-Santana, there's no question that what the complaining party wanted was citizenship. It wanted to be able to invoke, the plaintiff wanted to be able to invoke on behalf of his father the constitutional right to equal treatment for unwed fathers and unwed mothers. And yes, the grovelment of his claim is, I have a legal entitlement to equal treatment, but what is a practical matter the plaintiff wanted was citizenship. And he didn't get it as a result of the court's severability holding. The court said, we apply established principles of severability in order to determine what we think Congress would have intended. And the consequence is that even though you have established a violation of the right to equal treatment, you are not entitled to the practical result that you are seeking. Thank you, Counsel. Justice Sotomayor? Counsel, the difficulty in my mind with this case has been just touched upon by Justice Alito. Assume that I do think, or assume not that I think, but assume that this law is content based. I don't see in the record any evidence by you of how small this exception is. The other side says that most of the complaints to the FTC are because of debt collection. But there are no statistics about how big or small debt collection is with respect to consumer collection. And even if you could show me that they were a small part of the intrusions on people, they certainly are a big emotional complaint because they generate the most ire by citizens. But putting that aside, you haven't shown me why government debt calls are any different than commercial calls, private commercial calls for debt. In both situations, the debtor would expect a call about debts they own. That's an interest that the government's claimed, but you know, so what? Both debtors. So there is a discrimination aspect to this case that does raise the equal protection ground. But putting all of that aside, given that the burden is on you under strict scrutiny to show that you've narrowly tailored a law, if this is content based and with all the failings I've pointed to, how do you win on validating this act? Let me say two or three things about this. First, I think it would be impossible to make an empirical showing about kind of the smallness of the exemption relative to the whole. Because what you would want to compare the government debt calls to is not to other calls that are actually being made in the world. Because a lot of the calls that would otherwise be made are not being made precisely because they're borrowed by the TCPA. What you would want to be asking is how small is this class in comparison to all of the other automated calls that might be made if the TCPA were not enforced? Second, with respect to potential discrimination between collectors of government-backed debts and collectors of other debts, the distinction that we pointed to is that the collection of government-backed debts implicates the distinct federal interest in protecting the federal fisc. And it's not unusual for Congress to prefer federal debt collection efforts. For example, if Congress says the federal government can collect debts owed to it by offset on a tax return, by a tax refund, or Social Security benefits, the private creditors can't do that, or if the federal government has greater capacity to garnish wages, there's nothing problematic about that. The last thing we would say is collectors of private debts could petition the FCC for an exception. They could say there's no good reason to treat us differently, and therefore you, the FCC, should exercise your statutory authority to create an exception for all debt collection calls as to which the recipient is not charged. And then the FCC would either grant or deny that. If it was denied, there could be judicial review. So there could be a more targeted challenge that was premised on the differentiation between government-backed debts and others. But that's very different from now. Justice Kagan? Good afternoon, Mr. Stewart. Could we go back to what you started with? You said that there was no right way to think about how to analyze this question, that we could either apply constitutional analysis to the automated call restriction, or we could I'm wondering whether you could say a little bit more about that, because we have to pick some way. And on the one hand, the restriction is the only thing, the automated call restriction is the only thing prohibiting speech. But on the other hand, the exemption is the only thing that creates the constitutional issue in this case. So which end of the statute should we look at? Well, let me preface my answer by pointing to a hypothetical that's noted in the respondent's brief that we think is a good illustration of when it would be appropriate to focus on an exception. At page 22, respondents hypothesize a statute that has a categorical ban on all automated calls except for automated calls to a residential landline that endorse the re-election of Donald Trump and that are approved by the Trump campaign. Now, we think an exception like that for calls made to endorse a single political candidate would surely violate the First Amendment. It would be not only content-based, but viewpoint-based, and there would be no good justification for it in terms of the basic rationale for the restriction. And even if a court concluded that this was a very small percentage of calls, the exception didn't cast doubt on the credibility of Congress's overall privacy protection objectives, even if it didn't significantly interfere with the achievement of those objectives, the court would surely say that the exception was invalid. So is this statute like that statute? I don't think it's like that statute. It's probably not in the sense of the exemption is not viewpoint-based to the extent that that statute is, but you've heard some arguments that the exemption is content-based, so why not treat it the same way? I mean, I think at the very most, you would treat the exemption in the same way that you would treat it if a restriction were imposed based on the same criteria. And if there were certain restrictions placed on the collection of government-backed debt and only on the collection of government-backed debt, you wouldn't apply strict scrutiny to such a law for the same reasons I've discussed with respect to the securities laws, other hypothetical laws that could restrict communications in a particular area of commerce. Now, respondents have understandably focused their attention on the automated call restriction in part because of the severability question. If they could persuade the court that the exception was the invalid provision and it was struck down, they wouldn't really get what they want. But they have to establish distinct prerequisites to show that they have a valid constitutional challenge to the automated call restriction. One might be if the exception taken in combination with other features of the statute just made it seem as though Congress wasn't serious about protecting privacy, but the exception really can't. Thank you, counsel. Justice Gorsuch? Good morning, counsel. Some of my colleagues have already noted that the irony of a First Amendment challenge leading to the suppression of more speech as a remedy, I guess I wanted to explore that just a little bit further. As I understand it, you've taken the position that there's no right way to do severance here. But should we take cognizance of the fact that striking down the government debt provision was not relief that the plaintiffs sought in this case? And we normally take some cognizance of the adversarial process and the plaintiff's request for relief. We chided plaintiffs earlier in this term for not including all the relief they might have wanted in their complaint. And what do we do about the fact as well that the plaintiffs would seemingly have no standing to challenge an exception for government debt collection activities? So they didn't seek the relief and they don't have standing for this relief. Should those things tell us anything? I mean, I think that you could do it that way and the Court of Appeals could have done it that way. That is, the principal argument that the respondents have made all along is that the government debt exception combined with other features of the statutory and regulatory scheme really call into question Congress's commitment to the protection of privacy or prevent the statute from achieving that objective. And the Court of Appeals clearly didn't think that that was right. And the Court of Appeals could just have said, that's the only claim you made. I reject it. And whether or not you could have pursued a valid challenge to the exception itself, you haven't sought to pursue one and therefore I'm not going to consider it. I think given that the Court of Appeals ruled as it did, we have tried to confront that argument on the merits. With respect to the standing question, respondents have always sought as relief in validation of the automatic call restriction. And they clearly have standing to seek that. And if the Court holds that, yes, they're right that there's a First Amendment violation, but they are wrong about the remedy, that would not be a problem of standing. That would just be a problem on the merits of their claim or at least the merits of their claim with respect to the appropriate remedy. Let me come at it from yet another angle, and that's the separation of powers. The government's remedy proposed here is essentially that we should suppose or reimagine that less is suppressed. On what authority do we have the right to make that kind of judgment as opposed to simply enforcing the First Amendment, finding a violation, and liberating the speech that's been wrongly suppressed? Let me say two or three different things about that. The first part, either in validation of the exception or in validation of the restriction would produce a constitutional version of the TCPA. So from the standpoint of compliance with the First Amendment, neither is to be preferred. The second thing is courts face that same question when you're doing severability analysis in the equal protection context, where the result of severance may be that particular individual. If I might stop you there, I'm sorry, but the equal protection analogy, suppose that equal protection is a guarantee of equality, not of a substance. So you can level up or level down and satisfy equal protection, but the First Amendment is about a guarantee of speech. So it has content in a different way. Then what do you have? I think what we have is the temporal sequence here, where we had one public law in 1991 that enacted the basic autodial restriction, and then a second public law that was enacted in 2015. And if there is a constitutional infirmity, if you ask which public law introduced that constitutional infirmity, it would have to be the 2015 public law. Thank you, counsel. Justice Kavanaugh? Thank you, Mr. Chief Justice. Good afternoon, Mr. Stewart. I think the government debt exception is almost certainly content-based, at least for me, and I just wanted, as a matter of housekeeping, you don't argue that it could satisfy strict scrutiny, correct? That's correct. We've argued that the automated call restriction could satisfy strict scrutiny. Okay. So if those two things together make this, for me at least, a case about severability and leveling up or leveling down, and you were just on this with Justice Gorsuch, but it would help me if you could kind of tick through your strong points about severability again. I think the two strongest points, and then I'll link to the second, to the Communications Act severability clause. The two strongest points are we think there would be a tail wag wagging the dog quality to striking down the whole restriction, one that has been in place for nearly 30 years that has been popular with consumers, that has protected a vast array of people simply to preserve the ability of government debt collectors to use one more means of communication. The second is the temporal sequence. If we ask which law was it that introduced any constitutional invalidity, it would have to be the 2015 law, not the 1991 law. And so it would be natural if you were otherwise an ex-employee to say that's the law that would be struck down. Go ahead. I was going to say there is a severability clause that says if any provision of the Communications Act of which the TCPA is a part is held to be invalid, the remedy won't extend beyond striking down that provision. And for purposes of determining which is the invalid provision, I refer back to my point about temporal sequence. It is the 2015 law that introduced any constitutional invalidity. So a key point I think you just underscored there is that the premise of your severability argument, essential premise, is that the underlying ban is thoroughly constitutional. Or at least that the underlying ban was constitutional before 2015. That's without the exception. I meant to say without the exception, the underlying ban is perfectly constitutional. Yes. Okay. And how much should we take into account on the what would Congress have intended analyses like we see in the State's Attorney General's brief about consumer beliefs about these calls, that the common consumer complaint about robo calls? Does that go at all into our analysis of what Congress would have intended? I think certainly this was not unnoticed legislation. It's not legislation that fixed a technical problem. I'm talking about the original TCPA now. This is legislation that was intended to address a problem that Congress thought was immense that affected vast numbers of consumers. And obviously the amicus briefs describe complaints that are being made now about robo calls, even with the TCPA's restrictions in place. Thank you, Counselor. Would you take a minute to wrap up? Mr. Stewart? Thank you, Mr. Chief Justice. The last thing I'd say is I'd refer back to the point that I was making at the beginning where given the respondent is asking the court to focus on the restriction and not the exception, it's appropriate to ask whether the restriction is content-based, as the court in Reed understood that term. And the court in Reed described content-based laws as laws that target speech based on its communicative content. Respondent speech was not targeted based on its content. It was treated the same way as the vast majority of messages that people could use automated calls to transmit. Thank you, Your Honor. Thank you, Counsel. Counsel? Mr. Martinez? Mr. Chief Justice, and may it please the court, my clients are political organizations that want to engage in political speech at the core of the First Amendment. The TCPA bars them from using some of the most effective tools for communication now available, automated text messages and calls to cell phones. At the same time, the statute's exceptions let government-approved speakers use these same technologies to deliver government-approved messages that subvert the same privacy interests supposedly requiring a ban on all other calls. This content-based scheme arbitrarily favors commercial speech over core political speech. It violates the First Amendment and should be struck down. The call ban is extremely broad. Although the TCPA's primary purpose was to address telemarketing calls, the cell phone ban sweeps further and outlaws political and other noncommercial calls, even when citizens are open to receiving them. The government says Congress needed a restriction that broad in order to protect privacy. The statute's history disproves that. Congress and the FCC exempted noncommercial calls from the residential call ban after concluding that they do not adversely affect the privacy rights protected by the TCPA. There is no good privacy-based reason for treating these exact same calls differently when made to cell phones. The government debt exception confirms that Congress did not view the privacy interest here as compelling. That exception exposes 60 million Americans to unlimited calls to collect more than $4.2 trillion in debt. Those are the kinds of calls consumers hate the most. If Congress really thought privacy was paramount, it would not have allowed those calls. Because the speech ban is too broad and unjustified, the restriction, not the exception, must be struck down. That's what the court has always done in First Amendment cases, and rightly so. Federal courts cannot fix First Amendment violations by making more speech illegal. This court should reject the remedial approach that eliminates incentives to challenge unconstitutional speech bans and gives my clients no relief even though they won their First Amendment claim. Mr. Martinez, I'd like to focus on the argument based on our decision in Williams v. Lee, which is that when Congress takes steps that help cure a constitutional problem, they don't have to do everything at once. You object to the fact that some speech is allowed, but the allowance doesn't reach more broadly. What we said in Williams v. Lee, again, is so long as Congress is moving in what the court regarded as the right direction, they don't have to do everything at the same time. The fact that you say we should allow more speech here, here, and here, again, it doesn't mean that it has to be done at the same time as the first step was taken as it was here. Right, Your Honor. I think what the Williams v. Lee inquiry is really getting at is whether the exception undermines the credibility of the government's interest that it's been asserting. I think in this case, the 2015 exception really does undermine that because it's not trying to exempt the least intrusive of privacy speech available. It's actually exempting the kind of speech that the FCC itself has acknowledged is the most intrusive kind of speech. And those are the debt calls. And so Williams v. Lee, I think, is talking about a situation in which the government or Congress is trying or the legislature is trying to accommodate kind of the speech that is least problematic from the standpoint of the interest that's being asserted. But here, Congress has done the opposite. It's exempted the speech that's most problematic. And I think that really makes this a different case from Williams v. Lee and brings us squarely within the concern that Williams v. Lee had, which is that when Congress enacts broad exemptions like the one here, it might actually be a sign, it might be evidence of the fact that the interest that the government has asserted for a speech restriction really isn't that strong. Your friend on the other side on the severance question makes a very strong point that Congress had this law for 25 years, and then they added this pretty discreet exception that created the problem we have today. It seems pretty obvious that the way they would solve it is get rid of this exception. It's an extremely popular law. Nobody wants to get robocalls on their cell phone. The idea that Congress would embrace that result simply to save this government debt collection, they'd have to be very anxious to be more unpopular than they otherwise would be. Well, two points on that, Your Honor. First of all, I think that the fundamental problem here is the invalidity of the restriction. And I think that even before you get to any severability inquiry about intent, we have to be very careful and specific about what is unconstitutional about the statute. And I think what the 2015 exemption shows, as well as the much more favorable treatment to political and noncommercial speech when it comes to calls to home phones, what those show is that the privacy interest here really isn't compelling and that the restriction is what falls. You don't even need to look at severability. Justice Thomas? Thank you, Mr. Martinez. The problem that I have is you just said that the issue, that the real problem here is the restriction. But the evidence, the focus here is on the exception. And if you solve the exception problem, it doesn't solve your restriction problem, particularly if you sever that. And that's the sort of the asymmetry that's coming out. The problem is one thing, that is, that the restriction, but the constitutional problem is really the exception. So why don't you, I'd like you to explain what you just said, why the restriction is the constitutional problem as opposed to the exception. Right. And let me start with the two things that I think the exception does. Number one is it introduces a content-based distinction, and it defines the scope of the restriction, and therefore triggers strict scrutiny. But number two, and more importantly for purposes of our constitutional theory, what the exception does is it reveals the underlying frailty, the underlying insufficiency of the justification for the restriction. And why does it do that? It does it because you have Congress saying, because we want to get more money, we are willing to trade off privacy for revenue. And so Congress is coming in and making a judgment that money is more important than privacy. So what would your argument be if the exception did not exist? If the exception did not exist, and we were looking at the law today, I think our argument would be weaker, but I think we would still be able to show that the restriction would be unjustified. And I think the main thing would be. I mean, what would the analysis be? The analysis, the statute would no longer be content-based, so we'd be applying intermediate scrutiny. But I think in the context of applying intermediate scrutiny, we would look at the fact that calls to residential phones where, you know, calls to the home where privacy matters the most, these same types of political and noncommercial calls that my client wants to make are perfectly allowed. And so Congress and the FCC have made a judgment. And this is clear if you look at the 1992 order from the FCC. Congress and the FCC have made a judgment that noncommercial and non-telemarketing calls do not adversely affect the privacy rights that the TCPA protects. And they made that clear by essentially allowing those calls at all times of day to home phones. And so if you have that indicator of congressional intent, that they're not really worried about political calls and noncommercial calls, and they're not worried about that as an intrusion of privacy, then there's no rational reason to treat cell phones differently. And Congress certainly didn't make that judgment. Of course, in this case, we have not only the differential treatment of residential calls, but we also have the evidence provided by the 2015 exception, which shows that they're willing to trade off privacy for money, even though everyone would agree that collecting more money is not a compelling interest. And so you have Congress. Justice Ginsburg? Your challenge is predicated on the government debt exemption. I thought that the statute as originally enacted did have an exception for calls made by the government itself or government agency. Isn't that true? It's true that the definition of person, or at least as interpreted by the FCC, is that the statute does not apply to the government itself. And no one challenged that exemption for 20-odd years. One characterization is that this is really a minor restriction. That is, it doesn't prohibit calling. It doesn't prohibit conveying a message. It just prohibits using a certain automated technology to call. So it's a matter of communication. It's not a restriction on the message. Well, Your Honor, with respect, I do think it's fair to say that this is a restriction on a certain manner of making calls. But the types of calls that are either made legal or illegal, the dividing line between what's allowed and what's not allowed turns on the content of the calls. I think that if you were facing a statute that said, for example, you are not allowed to advocate for libertarians using e-mail or using phone calls or using handbills, all of those would be manner restrictions. But I think that we would all recognize that those are content-based restrictions that would trigger strict scrutiny and would inevitably fail. On your severability, we know that what Congress wanted to stop were out-of-the-blue calls, calls that you had no reason to anticipate. And calls about death owed to the government can be regarded as less invasive in that respect because they're not out-of-the-blue. They are simply a reminder of an obligation that the debtor undertook. Your Honor, with respect, I don't think that that's the original justification for this particular provision. And I would point to two things. First of all is the fact that the kind of out-of-the-blue calls that my clients might want to make, you know, political calls, those are calls that were perfectly allowed and were perfectly acceptable to the home when Congress and the FCC acted in the early 90s. And at that time, of course, home phones were, you know, over 90% of the phones in America were home phones. That's where the privacy interests were at their apex. And nonetheless, Congress and the FCC recognized that the kinds of calls my clients want to make don't tread on privacy interests enough to warrant that kind of restriction. And I think what that just shows is that, again, the privacy interest being asserted here isn't really strong enough. Even if you go look at what the FCC said about this, and I would look at the 1992 NPRM, especially at pages 8773, sorry, at page 2737 and then the 1992 order at 8773, because there the FCC said that non-commercial, non-telemarketing calls can be exempted without undermining the TCPA. If that's true, then that's the reason. Justice Breyer? Justice Breyer? Justice Alito? Mr. Martinez, I'm interested in your analysis of the severability question. And I wonder if you could say whether your position depends on either the breadth of an exception or exceptions or the manifestation of congressional intent. So let me give you an example, a fanciful example that tries to reduce both of those things, perhaps their lowest limit. Suppose there was a total ban on automated calls to cell phones or to all phones, but there was one tiny exception for, let's say, calls between noon and 1 p.m. on the 4th of July that contained this simple message, happy birthday, America. And let's say that the statute allowing this contains a provision that says that if the inclusion of this exception renders the statute unconstitutional, the statute itself shall remain in force and the exception shall be stricken. So would you say even in that situation, the whole statute would have to fall? Your Honor, let me try to address that in each of the two pieces, because I think it's a nuanced question and deserves a nuanced answer. First of all, with respect to the narrowness of that particular ban, I think that the fact that that particular restriction or exception is so narrow, I think that probably, you know, looking at the totality of the circumstances, we would look at that and we would think the existence of this one tiny exception and the fact that this really isn't going to invade privacy that much, I think that would probably be a reason to conclude that the restriction is not unconstitutional. And if that's true, then, of course, the severability analysis wouldn't be necessary. If you take the other part of your hypothetical, though, if, as I understand it, if the statute had a provision in it that essentially said if the restriction fails, you should nonetheless sever the exception and reinstate the restriction, I don't think that that would be appropriate, because I think the reason that the restriction would fail in that circumstance is that it's insufficiently justified. And getting rid of that exception doesn't solve that problem. The exception, you know, again, assuming that the exception was big enough to actually create a problem of constitutional deficiency with the statute, the exception is evidence of why the restriction is unjustified. And so getting rid of that doesn't solve the problem with the restriction. That does seem to thwart a pretty clear manifestation of congressional intent, but you think that's irrelevant in this situation? Well, I think in a circumstance here, and I don't think this is, I don't think the government disagrees with us on this. If you look at pages 17 to 18 of their reply brief, they essentially agree that if the problem with the statute is the restriction, then the restriction has to fall. Now, I think there's another way to look at the case, and, you know, I think my friend on the other side has sort of tried to frame it this way. If you thought that the only problem with the statute was not the justification for the restriction, but rather the fact that there's differential treatment, we think that you still, as a First Amendment matter, for a number of the reasons already mentioned, that you would still need to get rid of the restriction. But even if you didn't agree with us on that, I think our fallback position would be the position the Third Circuit took in the RAPA case, which is that you'd need very specific evidence of congressional intent. And I guess in that case, in your hypothetical, if your hypothetical expressly addressed the situation, then maybe in that case the exception would be severed. But, again, that is not the case here, because here the underlying restriction is what's unconstitutional. Thank you, Counsel. Justice Sotomayor. Mr. Martinez, are you taking the position that all restrictions of robocalls are unconstitutional, or that just a broad restriction like this one is unconstitutional because there's some types of speech that should not be covered? Well, I think, Your Honor, in this case, obviously we're dealing with the statute at hand. I think that there are some restrictions on robocalls that I think probably would satisfy the appropriate level of scrutiny. And just to take one example, the way that the ban on calls works to home phones right now, it's essentially a ban on commercial telemarketing robocalls to the home. And that is the heart of what the TCPA was getting at, and that's what Congress and the FCC said, you know, this is really the core privacy that we're trying to protect. I think that kind of statute is what's constitutional. And I agree with you, and I can think of others. If any schemes to get money, because there's so many scans from robocalls. But putting all of that aside, assuming that there is a part of the restriction that could survive strict scrutiny under your claim, why shouldn't we limit any remedy striking down this provision simply to permit the types of calls that your clients make? Why should we be striking down the entire statute? Now, you would have to prove, and I don't know that the court has done this below, that restricting political speech is not narrowly tailored, and I don't know that that's been done in this case. But if the issue is the remedy, shouldn't we let the circuit below decide that question? Your Honor, two points on that. First of all, we brought this as a facial challenge. We, of course, would welcome the kind of relief that you hypothesized, although we do think that the appropriate relief here really is to strike down the restriction in its entirety. And one of the reasons for that is the point that you raised with Mr. Stewart earlier, which is the entire absence of any evidence or justification for this particular ban for any of it, all of it or pieces of it, that the government has completely failed to put forward. I mean, this statute is subject to strict scrutiny, and this court has said over and over again that the government is the one, that there is the burden of satisfying strict scrutiny. They address strict scrutiny in, I think, a single sentence with respect to the restriction, a single sentence in their opening brief, a single substantive sentence in their reply brief, and nothing else. They're trying to turn strict scrutiny into a rubber stamp. And I think the best thing to do in these circumstances is hold the government to its burden of proof, invalidate the restriction, and then Congress can come back and act and legislate in a way that's rational in light of the court's decision. Thank you, counsel. Justice Breyer. Thank you. I'm sorry. The telephone started to ring, and it cut me off the call, and I don't think it was a robo-call, and we got it straightened out. Okay. My question is this. Forget the political part of this. Assume it's out of it. So now what worries me is if you call this calling for strict scrutiny, I guess the government's justification, which is that government debt is owed to us all as taxpayers, private debt is not, so treat it specially. Well, there are many situations, food and drug agencies, agricultural agencies governing selling, the FTC, the SEC, where they will have regulations, and the regulations will have a broad category, and item X falls within it. Lamps may fall within categories that require you to put electricity regulation on. How many amps does it use or whatever? But then you discover a subcategory of the one you just put in, and you say leave out the subcategory for some reason. Now, if court starts criticizing that for strict scrutiny, well, very few will survive. But the normal way of looking at it is, is it a reasonable thing? Justice Brandeis's third category. Very well. Why does this case fall into strict scrutiny once I get the politics out, but not Justice Brandeis regulation? Your Honor, a couple of points on that. I think this case falls into strict scrutiny because it satisfies the test for what constitutes a content-based restriction that was set forth in Reed. And as I know, Your Honor will remember, you realize that what I'm doing is I'm I'd dissented, and I'm wondering whether to stick to that approach or not. So Reed will not convince me it's a good majority, but I didn't think good enough. Well, I would hope that stare decisis would be a factor, even if you disagreed with me. Okay. Okay. But that isn't what I'm trying to get at. I'm trying to clarify my own thinking on it. Fair enough, Your Honor. Well, I don't think you should be concerned about the prospect of other laws that are economic regulations sort of being impacted by this at all. Yes, that's what I want the answer to, exactly why. Right. In those cases, those kinds of restrictions that sort of get tangled up with speech in the context of those kinds of regulations, those would be at most commercial regulations of speech, which wouldn't be subject to strict scrutiny, regardless of whether or not they're considered content-based. So, for example, the government lists a number of statutes in its brief that it says, you know, the sky is going to fall and all those statutes are going to be unconstitutional if we win. And that's just simply not true. So, at most, those statutes would be regulations of commercial speech at most. And if so, they would try to trigger intermediate scrutiny under this court's settled doctrine. Justice Kagan. Good afternoon, Mr. Martinez. Good afternoon. To give you a hypothetical, suppose this statute was written in a slightly different way, and it exempted any calls between the holder of a government debt and the debtor. Would strict scrutiny apply? Your Honor, I think that in that circumstance, the regulation would not turn on the content of the calls, and so I don't think strict scrutiny would apply for that reason. Right. In other words, it would turn on the relationship. And so I guess the question is, what's the difference? I mean, that's what Congress was trying to get at, and maybe they didn't know all our arcane First Amendment rules, but that regulation basically covers a particular kind of economic activity, the collection of government debts, and this regulation covers the same kind of economic activity, the collection of government debts. There are two ways of getting at the same thing. Both are directed at the economic activity of the people involved. Why should there be any difference? With respect, and perhaps I misunderstood the hypothetical, Justice Kagan, but I thought in your hypothetical that as long as the relationship element was satisfied, the call could be on any subject whatsoever. Well, we know that holders of government debt call debtors to collect debts. That's what they call them for. They're not calling them to discuss political issues. Well, with respect, Justice Kagan, I'm not sure that's right, and the FCC has expressly addressed this situation in their August 2016 order at page 9087, where the FCC has contemplated discussing and addressing the content of the calls at issue being made by collectors of government-backed debt, and it contemplates that the subject matter of the call might range beyond the collection of government-backed debt. Maybe they're going to be marketing some other product. Maybe they're going to be saying, hey, call your congressman and change these laws that apply to banks. And what the FCC has said is that when the subject matter of the call ranges to the topic, then the call is transformed, and it's a call that would have been allowed and is no longer allowed. And so I think the technical issue is different here. Excuse me. I get the technical issue, Mr. Martinez, but I guess what I'm saying is that there are two ways where Congress is trying to get at the same thing, which is the calls between debt holders and debtors almost always about the debt. But, you know, why should we care? You know, even if Congress didn't write this in exactly the right way, why is it that we should care so much as to put strict scrutiny into place? This doesn't raise any real concerns about government censorship, about the suppression of ideas, about a distorted marketplace of ideas. Why is this an appropriate time to put strict scrutiny into place given that what the government, what the legislation is trying to get at is an economic relationship and the things that flow from that relationship? Your Honor, I think that the robust test for content-based speech restrictions that this court adopted in Reed is important because it protects liberty. It makes it harder for Congress to enact broad speech bans that affect everyone, while at the same time assuming it can then just carve out special exemptions for favored groups. And I think the way to police that problem is by making sure that Congress has to be very careful before it enacts the broad ban and make it clear to them that they can't just do that and then, for example, as in this case, delegate authority to a government agency to hand out specialized exceptions for whatever well-heeled party turns up and claims an exemption. And so I think that that is one of the – Justice Gorsuch? Counsel, I'd like to just turn back to the intuitive appeal of the government severability argument. If, as I think you've conceded, that the statute before the government debt exception would not have been Congress then comes in and adds the government debt exception, and that changes the equation. The intuitive argument based on that sequence of events is, well, just get rid of the government debt exception, and we go back to the status quo ante where everything was fine. Why should we reject that intuition? I think there's a philosophical reason and a historical reason. The philosophical reason is essentially that in the First Amendment context, courts should not be making more speech illegal because if courts take a certain type of speech that Congress expressly chose to allow and then courts make the decision to prohibit that speech, they're essentially stepping into the legislature's shoes and making very sensitive policy tradeoffs that indisputably cut against First Amendment interest, and they shouldn't be the ones to do that. Philosophically as well, you need to make sure that people have incentives to challenge unconstitutional laws. I think as a historical matter, though, I think it's important to recognize that the original justification for the ban on cell phone calls here was essentially that those kind of calls to cell phones would inflict charges on called parties, and that's the reason that the ban was in place originally, and that's why it may have been justified earlier. But in today's world, those call plans essentially don't exist, or overwhelmingly people are not charged when they receive calls to their cell phone. And so the historical facts are different now, and because of the fact that everyone has cell phones, the government has an especially strong interest now from a revenue perspective of making those debt calls. If you take all that and wrap it up together, I don't think there's a good historical basis or empirical basis for concluding that, in fact, we know with certainty, or the kind of certainty we should have in the First Amendment context, that Congress would have wanted to reenact this statute if it wasn't allowed to make the calls to collect government-backed debts. Let me see if I've got at least that second point, my hands around it. The argument is that maybe the first Congress that enacted the original statute thought that all robo-calls should be prohibited, with some exceptions that you have no complaint with. The second Congress, acting at a different time, had a different judgment about which calls should be permitted, and that included this government debt exception. We don't know whether the second Congress, enacting the revised statute, would prefer a situation in which all calls are prohibited or all calls are allowed. Does that sum it up? I think that sums it up with one small caveat, which is that we are talking now on the assumption that there is a severability analysis that's required here that turns on intent. I do think our primary position is that the nature of the First Amendment and the nature of the constitutional flaw in this statute, which is the flaw with the restriction, we think that that means that essentially under everyone's understanding of severability principles, the restriction must be struck down. Thank you, counsel. I'm sorry. Justice Gorsuch? No, I'm fine. Thank you, Chief. Justice Kavanaugh? Thank you, Chief Justice. Good afternoon, Mr. Martinez. On severability, we have no precedent either way on severability, as I understand it, when the First Amendment problem is created by an exception to a ban on speech rather than the First Amendment problem being created by the underlying ban without the exception. So I don't think we have any precedent either way. And the question, as you've pointed out and Mr. Stewart's pointed out, is level up or level down as the remedy. The key first question, and I asked Mr. Stewart about this, I want to make sure I have you on this, is the underlying restriction here, the underlying restriction on cell phone robocalls constitutional without the government debt exception. So I want you to focus exactly on that question. Yes. We think that given all the evidence we know now about what Congress's interests are and how strongly they believe or don't believe in the privacy interest, we believe that the restriction is unconstitutional. Let me just make sure I have you exactly right. The underlying restriction, if there had never been a government debt exception, let me phrase it that way, if there had never been a government debt exception, is the underlying restriction unconstitutional? We would say yes based primarily on the differential treatment of the residential call bans. But I just want to say one thing on that, Justice Kavanaugh, because you want me to hypothesize that the 2015 law had never been passed. I think that the 2015 law, if you think about that law as evidence, as evidence of what Congress thought about privacy, the fact that it wasn't passed doesn't mean that deep down Congress believed in privacy more than was later revealed. So I think it's important to recognize that in our argument, the role of the 2015 exception is not merely to introduce the textual content-based distinction, but it's also to reveal the underlying lack of justification, which was always there. I guess on that point I would pick up on what the Chief Justice said in the state's amicus brief. If you just take a peek, just a peek at the real world here, this is one of the more popular laws on the books because people don't like cell phone robocalls. That seems just common sense. Do you want to argue against that common sense? I think aspects of the law are popular. I think the head of the FCC has called this law the poster child for lawsuit abuse. And the reason for that is, and this isn't directly implicated in this case, there's a whole bunch of other problems with the law as well. And so I think this law has its supporters and its detractors. But I don't think you should worry about Congress's ability to protect people. Even if we win this case, Congress is going to have plenty of options that are fully constitutional in order to protect people from unwanted calls. It can focus on the telemarketing calls. It can expand the remedies available under the do not call list, which essentially allow consumers and recipients to opt out. Sorry, even if you lose this case, Congress can, of course, scale back what you view as overbroad restrictions. But if you lose this case, Congress will still have in place a restriction that's been on the books for 30 years and that has been perceived as constitutional and that is very popular. Well, I guess what I would say is that I think the right way to think about this is to apply the doctrinal tools that you always apply in First Amendment cases, even in cases where the speech involved is not popular. I mean, the First Amendment is there not just to protect speech that people like, but to protect speech that people might find offensive or annoying. Thank you, Counselor. Mr. Martinez, would you like to take a minute to wrap up? Thank you, Your Honor. The core purpose of the First Amendment is to protect the free exchange of political speech, even when people might find that speech to be a nuisance. That's what this court recognized in the Martin case when it said that First Amendment rights protect people from making intrusive door-to-door solicitations. That's protected activity. The calls at issue here are protected activity as well. We ask you to do what you always do in First Amendment cases. Strike down the unconstitutional restriction on speech. Thank you, Your Honors. Thank you, Counsel. Mr. Stewart, you have rebuttal. Thank you, Mr. Chief Justice. I took Mr. Martinez to acknowledge that if this were a restriction on speech undertaken to collect a government-backed debt, it would be subject at most to intermediate scrutiny because it would be commercial speech and would be subject to distinct First Amendment treatment on that basis. And the position of the other side is this provision should be reviewed more skeptically, should be subject to more searching review because its effect is to take particular speech out from under regulation rather than to regulate. And that's contrary to the usual understanding that the First Amendment exists to foster speech. It's contrary to the court's reference in Reed to laws that target speech because of its communicative content. Why would the court review more skeptically a law that looked at the same basis as a rationale for exempting speech rather than to regulate? The second thing is Mr. Martinez said many times that Congress and the FCC have exempted noncommercial calls from the automated call restriction. And I think that really overlooks the respective responsibilities of Congress and the FCC. Congress has broadly regulated at least calls using a prerecorded voice or an artificial voice to residential landlines just as it has calls to cell phones. Both of the underlying bans encompass noncommercial calls. Congress has vested the FCC with broad, though not identical, authority to exempt particular categories of calls from the residential and the cell phone ban, respectively. And you can look at page 5A and 6A of the Offenders to the Government's Merits Read to see that the exemption authority is basically comparable. The discrepancy under current law results from the fact that the FCC has exercised its exemption authority much more robustly with respect to residential landlines than it has with respect to cell phones. That can't create a facial constitutional infirmity in the statute itself. If people think that the FCC should adopt comparable exemptions for noncommercial calls to cell phones, they can file a petition to that effect. The last thing I'd say in respect to is the colloquy between Mr. Martinez and Justice Kagan, where Mr. Martinez said, yes, if they had framed it not in terms of the content of the call, but in terms of all calls from the holder of a government-backed debt to the debtor, that that would be subject to more relaxed scrutiny. And that would simply – an approach that distinguished on that basis would simply encourage Congress to enact laws with more of a broad brush. It would discourage Congress from trying to fine-tune laws. And that discouragement would only be exacerbated if we took the Respondent's approach to severability, striking down the whole law. Thank you, Mr. Chief Justice. Thank you, Counsel. The case is submitted.